IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Louis Garrett, Jr., | ) | C/A No. 0:18-1416-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Chad Binkley; Charles M. Williams, Jr.; Kevin D. Cross, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Robert Louis Garrett, Jr., a self-represented state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983. Garrett filed this action *in forma pauperis* under 28 U.S.C. § 1915 and § 1915A. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motions for summary judgment. (ECF Nos. 207 & 263.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Garrett of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (ECF Nos. 208 & 265.) Garrett moved for and was granted numerous, lengthy extensions of time in which to file a response. (See, e.g., ECF Nos. 211, 217, 232, 233, 241, 247, 248, 257, 258, & 271.) In its September 4, 2020 order, the court warned Garrett that this action may be dismissed for failure to prosecute or may be decided on the record presented in support of the defendants' motion if Garrett failed to file a response. (ECF No. 258.) Despite having had over eight months in which to do so, Garrett has failed to file any response within the court's deadlines to Defendant Binkley's motion for summary judgment and likewise has failed to file any response to the motion for summary

judgment filed more recently by Defendants Cross and Williams.[1]  Accordingly, having reviewed the record presented and the applicable law, the court concludes that the defendants are entitled to summary judgment.

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to Garrett, to the extent they find support in the record.[2]  Garrett alleges that on or about May 9, 2015 while housed at Perry Correctional Institution ("PCI"), Defendant Binkley delivered a food tray to Garrett via the cell's food service flap.  (Am. Compl. ¶ 31, ECF No. 172 at 4.)  Garrett acknowledges that when Binkley returned to retrieve the tray, Garrett refused to return it and Binkley became angry.  (Id. ¶¶ 31-32.)  Garrett alleges that after several other people spoke with him, he returned the tray.  (Id. ¶ 33.)  Garrett further alleges that Defendant Williams then directed that Garrett be placed on "control cell," but Garrett refused to come to the cell door to be placed

---

[1] Garrett filed another motion requesting an extension of time on November 9, 2020.  (ECF No. 274.)  In his motion, Garrett maintains that extraordinary circumstances warrant additional time because the defendants refuse to turn over critical discovery material and because he still does not have adequate access to the law library and typewriter.  The issue regarding discovery in this matter has been fully litigated and resolved as of June of 2020.  Additionally, Garrett has provided the court with hundreds of pages of written pleadings in his federal cases, so it is unclear how the lack of access to a typewriter is critical for Garrett's filing a response to the defendants' motions.  Furthermore, Garrett concedes that he has some access to the law library, but argues that it is insufficient.  All of these arguments fail to show the extraordinary circumstances or good cause necessary to warrant yet another extension of Garrett's deadlines.  Accordingly, Garrett's motion for an extension of time is denied.

[2] Garrett's initial Complaint filed in C/A No. 0:18-1309 contains allegations against numerous defendants spanning a large period of time and occurring at several different South Carolina Department of Corrections ("SCDC") facilities.  In its May 24, 2018 Order, the court determined that Garrett's claims should be severed into four civil actions.  (See ECF No. 1.)  Accordingly, only Garrett's allegations against Defendants Binkley, Cross, and Williams regarding the May 9, 2015 incident that occurred at Perry Correctional Institution are relevant to the instant civil action.  (Id. at 2.)  Garrett later filed an Amended Complaint that contains only the allegations specific to this civil action.  (ECF No. 172.)

in handcuffs.  (Id. ¶ 35.)  According to Garrett, Williams then authorized a cell extraction.  (Id. ¶ 36.)  Garrett admits that he still did not comply with officers' instructions and that the officers then "sprayed him with so much chemical munitions that he lost consciousness."  (Id.)  Garrett alleges that he regained consciousness as he was being dragged down a hallway in handcuffs and leg irons and was taken to the medical department where he was seen by a nurse and subsequently returned to his cell on "control cell" status.  (Id. ¶¶ 36-38, ECF No. 172 at 4-5.)

The court construed Garrett's Amended Complaint as alleging only claims pursuant to 42 U.S.C. § 1983 for excessive force, deliberate indifference, and retaliation.  (Order, ECF No. 182 at 1.)  No party challenged this construction of the claims.  Garrett seeks monetary and injunctive relief.  (Am. Compl., ECF No. 172 at 6.)

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-

moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson v. Pardus, 551 U.S. 89 (2007), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Defendants' Motions for Summary Judgment**

**1.    Failure to State a Claim**

The defendants argue that Garrett's Complaint fails to state a claim against the defendants because Garrett has not alleged facts sufficient to plausibly show that the defendants were personally involved in the purported deprivations of Garrett's rights.

The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his or her individual capacity. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, to the extent Garrett raises claims against the defendants in their supervisory capacities, a claim based upon the

doctrine of *respondeat superior* does not give rise to a § 1983 claim. Iqbal, 556 U.S. at 676; Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section.' ") (quoting Vinnedge v. Gibbs, 550 F.2d, 928 (4th Cir. 1977)). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Although the defendants argue otherwise, the court finds that Garrett has sufficiently alleged an Eighth Amendment claim of excessive force against Defendants Binkley, Williams, and Cross by alleging that these officers "spray[ed] Plaintiff with an EXCESSIVE amount of chemicals." (Am. Compl. ¶¶ 42, 44, ECF No. 172 at 5.) Accordingly, the court will address this claim on the merits, below. However, to the extent Garrett attempts to allege any other claim against these defendants, he has failed to allege any facts that would show that these defendants were personally involved in a purported constitutional deprivation. See Iqbal, 556 U.S. at 676.

### 2.  Eighth Amendment—Excessive Force

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his claim under the Eighth Amendment, the plaintiff must demonstrate: (1) objectively, the deprivation suffered or injury inflicted was "sufficiently serious," and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be

called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.' " Williams, 77 F.3d at 761 (quoting Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 7). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, the objective component is "contextual and responsive to 'contemporary standards of decency.' " Id. at 8 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). Accordingly, "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation," and it may also provide an indication of the amount of force that was applied. Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 7). In an excessive force analysis, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312,

322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting. See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984). In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution. Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner. Bailey, 736 F.2d at 969-70. The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat. Id. Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas

was used." Id. at 969.  Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams, 77 F.3d at 763 (internal quotations marks and citation omitted).

As described above, Garrett alleges that when he refused to come to his cell door to be placed in handcuffs, Defendant Williams authorized a cell extraction.  He alleges that he was then sprayed with chemical munitions and lost consciousness.  In support of their motion for summary judgment, the defendants have provided the Use of Force Report, various incident reports, management information notes, and Garrett's relevant medical records.[3]  As stated above, Garrett failed to file any response to the defendants' motions.

Examining the facts in the record and applying the Whitley factors, the court concludes on the record presented that no reasonable jury could find that the defendants' actions violated the Eighth Amendment.  Importantly, as admitted by Garrett in his Amended Complaint, Garrett was noncompliant in that he initially refused to return his food tray and then subsequently refused to obey repeated directives given by SCDC officers to come to the cell door to be handcuffed.  Thus, Garrett's repeated noncompliance necessitated the use of force.  See Whitley, 475 U.S. at 321; Bailey, 736 F.2d at 969-70; Brown v. Eagleton, C/A No. 4:14-cv-357-BHH, 2015 WL 5781504 (D.S.C. Sept. 30, 2015) (rejecting the argument that "prison officials may not use mace or chemical munitions on disruptive prisoners who are locked in a cell and may only use write ups and the loss of privileges to secure compliance and maintain discipline").

---

[3] Although the defendants reference the videotape of the incident as an exhibit to their motion, such video was not provided to the court.

Garrett specifically complains about the amount of chemical munitions deployed in alleging that the defendants used excessive force. As stated above, the use of chemical munitions by prison officials is not a violation of a prisoner's constitutional rights when used appropriately. See Williams, 77 F.3d at 763. In examining the second factor under Whitley, the court observes that, though the total amount in this case is not small, the record before the court shows that Garrett was given multiple opportunities to comply with the directive to come to the door of the cell to be handcuffed and that he refused to comply. Cf. Arnold v. South Carolina Dep't of Corrs., C/A No. 9:13-1273-JMC, 2014 WL 7369632, at *6 (D.S.C. Dec. 29, 2014) (concluding that the use of fogger to disperse multiple bursts of chemical munitions was not excessive when considering the arguments and evidence presented and the Whitley factors). Additionally, the defendants have presented unrefuted evidence that the chemical munitions were dispersed generally and incrementally into the cell over a period of time and that Garrett had taken measures to actively defend against the chemical munitions by crawling under his bed, covering his face with his jumpsuit and towel, and using his mattress as a barricade, which would necessitate a larger amount of chemical munitions be used in order to be effective. (Incident Report, ECF No. 207-2 at 10.) Significantly, there is no evidence in the record—nor does Garrett allege—that any application of force continued after he had been restrained. Accordingly, under the circumstances presented here, the only reasonable inference is that multiple bursts of chemical munitions were rendered in repeated attempts to restore order and institutional security rather than maliciously or sadistically to cause harm. See Whitley, 475 U.S. at 322; Bailey, 736 F.2d at 969-70.

Examining the extent of injury actually inflicted, the court observes that Garrett was examined by medical personnel shortly after the incident and was given an opportunity to shower, which Garrett declined. (Incident Reports, ECF No. 207-2 at 9-10; Med. Rec., ECF No. 207-5 at

2.) However, Garrett was returned to his cell, which had been cleaned, and a nurse checked on him three times during the subsequent hour, instructing Garrett when he complained about his eyes to flush them with water from the sink in his cell, which he did. (Med. Rec., ECF No. 207-5 at 2.) Notably, although Garrett complains of physical and mental injuries, he concedes that he received medication for his physical injuries and his mental health. (Am. Compl. ¶ 50, ECF No. 172 at 6.) Accordingly, applying both the Whitley and Bailey factors, the court concludes that no reasonable jury could find that the defendants' use of chemical munitions was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm. See Wilkins, 559 U.S. at 37; see also Whitley, 475 U.S. at 321-22; Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

## RECOMMENDATION

Accordingly, the court recommends the defendants' motions for summary judgment be granted. (ECF Nos. 207 & 263.)

November 17, 2020  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).